**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Puente Arizona, et al.,<br><br>          Plaintiffs,<br><br>v.<br><br>Joseph M. Arpaio, et al.,<br><br>          Defendants. | No. CV-14-01356-PHX-DGC<br><br>**ORDER** |

On January 5, 2015, the Court entered a preliminary injunction. Doc. 133. Among other findings, the Court ruled that Defendant Maricopa County is liable for Sheriff Arpaio's law-enforcement decisions under § 1983 because the sheriff acts as a final policymaker for the County when he enforces Arizona law. *Id.* at 38-40. The County now asks the Court to reconsider this ruling or, in the alternative, to certify the question to the Arizona Supreme Court. Doc. 141. The Court will deny the motion.

**I.     Motion for Reconsideration.**

**A.     Legal Standard.**

Motions for reconsideration are disfavored and should be granted only in rare circumstances. *Collins v. D.R. Horton, Inc.*, 252 F. Supp. 2d 936, 938 (D. Ariz. 2003). A motion for reconsideration will be denied "absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to [the Court's] attention earlier with reasonable diligence." LRCiv 7.2(g)(1); *see Carroll v. Nakatani*,

342 F.3d 934, 945 (9th Cir. 2003). Mere disagreement with an order is an insufficient basis for reconsideration. *See Ross v. Arpaio*, No. CV 05-4177-PHX-MHM, 2008 WL 1776502, at *2 (D. Ariz. 2008). Nor should reconsideration be used to ask the Court to rethink its analysis. *United States v. Rezzonico*, 32 F. Supp. 2d 1112, 1116 (D. Ariz. 1998); *see N.W. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 925-26 (9th Cir. 1988).

**B.   Analysis.**

"Pursuant to 42 U.S.C. § 1983, a local government may be liable for constitutional torts committed by its officials according to municipal policy, practice, or custom." *Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1028 (9th Cir. 2000) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-91 (1978)). "To hold a local government liable for an official's conduct, a plaintiff must first establish that the official (1) had final policymaking authority 'concerning the action alleged to have caused the particular constitutional or statutory violation at issue' and (2) was the policymaker for the local governing body for the purposes of the particular act." *Id.* (quoting *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 (1997)). "Although [the Court] must consider the state's legal characterization of the government entities which are parties to these actions, federal law provides the rule of decision in section 1983 actions." *Streit v. Cnty. of L.A.*, 236 F.3d 552, 560 (9th Cir. 2001); *see also Goldstein v. City of Long Beach*, 715 F.3d 750, 760-61 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 906 (2014).

In its previous ruling, the Court found, for purposes of § 1983, that Sheriff Arpaio was a final policymaker for Maricopa County when making law-enforcement decisions. The Court provided this explanation:

> The Arizona Constitution creates the elected office of sheriff for each county and provides that the sheriff's duties and powers "shall be as prescribed by law." Ariz. Const. art. XII, §§ 3-4. Under A.R.S. § 11-441, the sheriff is empowered to "[a]rrest and take before the nearest magistrate for examination all persons who attempt to commit or who have committed a public offense." *Id.* "The purpose of this duty is the prompt and orderly administration of criminal justice, including the Sheriff's discretionary investigatory determination of when enough evidence has been obtained to make an arrest." *Guillory v. Greenlee Cnty.*, No. CV05-352-TUC-DCB, 2006 WL 2816600, at *4 (D. Ariz. Sept. 28, 2006). Under A.R.S. § 11-

> 444, the local county is responsible for paying the "actual and necessary expenses incurred by the sheriff in pursuit of criminals" as well as additional expenses.
>
> These provisions make Sheriff Arpaio a final policymaker for Maricopa County. Unlike in *McMillian*, where the court found that the sheriff was a state but not a county officer, Arizona law designates the sheriff as a county officer. *See McMillian*, 520 U.S. at 788-89; *see also* A.R.S. § 11-401 (listing the sheriff as an officer of the county). The Sheriff's responsibility for criminal law enforcement makes him a person "whose edicts or acts . . . may fairly be said to represent official policy[.]" *Monell*, 436 U.S. at 694. Sheriff Arpaio's decision to enforce the identity theft laws, therefore, makes Maricopa County liable for that action.
>
> Defendants argue that Maricopa County's lack of control over Sheriff Arpaio's law-enforcement decisions shows that he is not a final policymaker for the County. *See* Doc. 118 at 16-19. But the Arizona Court of Appeals has held that the Sheriff is the final policymaker for the County on matters of jail management, *Flanders v. Maricopa Cnty.*, 54 P.3d 837, 847 (Ariz. Ct. App. 2002), and the County has not explained, nor can the Court discern, how the County has more control over the Sheriff's jail-management decisions than over his law-enforcement decisions. *Flanders* compels the conclusion that Sheriff Arpaio is the final policymaker for the County on law-enforcement matters. Furthermore, every district court to address this issue has held that Arizona counties are liable for law-enforcement decisions of local sheriffs. . . . Due to this finding, the Court need not decide whether County Attorney Montgomery is also an official policymaker for the County.

Doc. 133 at 38-40.[1]

The County again argues that it is not liable under § 1983 for Sheriff Arpaio's law-enforcement decisions because the County lacks control over the sheriff. Doc. 141. The County highlights the history of the Arizona Constitution, relevant statutory law, and a later ballot initiative to show that the intent of Arizona law is for the county sheriff to be an elected official who is separate from and uncontrolled by the local county. Finally, the County argues that the County Attorney is also not a final policymaker for the County.

---

[1] The following cases have found that the sheriff is a final policymaker for Maricopa County in the context of criminal law enforcement. *United States v. Maricopa Cnty.*, 915 F. Supp. 2d 1073, 1083-84 (D. Ariz. 2012); *Mora v. Arpaio*, No. CV-09-1719-PHX-DGC, 2011 WL 1562443, at *7 (D. Ariz. Apr. 25, 2011); *Lovejoy v. Arpaio*, No. CV09-1912-PHX-NVW, 2010 WL 466010, at *12 (D. Ariz. Feb. 10, 2010); *Ortega Melendres v. Arpaio*, 598 F. Supp. 2d 1025, 1038-39 (D. Ariz. 2009); *Guillory*, 2006 WL 2816600, at *3-5. The following cases have found that the sheriff is a final policymaker for Maricopa County when administering jails. *Wilson v. Maricopa Cnty.*, 463 F. Supp. 2d 987, 991 (D. Ariz. 2006); *Flanders.*, 54 P.3d at 847.

1    Contrary to the County's argument, a county's lack of control over a sheriff is not
2 dispositive of its liability for his law-enforcement decisions under § 1983. When
3 deciding whether an official is a final policymaker for a municipality, courts look at a
4 variety of factors. These include how state law defines the official's office, the scope of
5 the official's duties, the source of the official's salary and equipment, whether the
6 municipality indemnifies the official, as well as the extent of the municipality's control
7 over the official. *See, e.g.*, *McMillian*, 520 U.S. at 787-93; *Goldstein*, 715 F.3d at 755-
8 58; *Brewster v. Shasta Cnty.*, 275 F.3d 803, 808-12 (9th Cir. 2001). Thus, while a
9 municipality's degree of control is relevant, it is not the only consideration.

10   As the Ninth Circuit has explained, the "task is not merely to weigh the amount of
11 control that the [state] and county board of supervisors possess over [the official];
12 instead, we must decide whether the [official] was acting *on behalf of* the state or the
13 county." *Goldstein*, 715 F.3d at 755 (emphasis in original); *see Brewster*, 275 F.3d at
14 810 ("Merely because a county official exercises certain functions independently of other
15 political entities within the county does not mean that he does not act *for* the county.").
16 Therefore, even if "the County and [Board of Supervisors] are not authorized to control
17 the Sheriff as to law enforcement," Doc. 159 at 5, the County has not shown that the
18 Court's decision was manifest error. Rather, the Court appropriately considered a
19 number of relevant factors – including the Arizona Constitution's definition of the
20 sheriff's office, the source of the sheriff's funding, and the scope of his powers – and
21 found that these weighed in favor of finding the sheriff to be a final policymaker for the
22 County.

23   The County disagrees with the Court's reliance on *Flanders*. While *Flanders*
24 dealt with the sheriff's jail-management decisions, as opposed to his law-enforcement
25 decisions, the reasoning in *Flanders* certainly is relevant to this case. The Arizona Court
26 of Appeals held the County liable for the sheriff's jail management policies under § 1983
27 even though the sheriff, as noted by the County here, is a separately elected county
28 official who is not directly controlled by the County Board of Supervisors. 54 P.3d at

1 847. The County's attempt to distinguish *Flanders* from this case is unconvincing. *See*
2 Doc. 141 n.4. Jail management, like law enforcement, "involves discretion, judgment,
3 legal analysis and a balancing of constitutional rights." *Id.* The County's motion for
4 reconsideration is denied.

## II. Certification of Question to Arizona Supreme Court.

The County asks the Court to certify the question of its liability to the Arizona Supreme Court. This Court may certify a question of state law to the Arizona Supreme Court when that question "may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the intermediate appellate courts of this state." A.R.S. § 12-1861. In addition to the fact that *Flanders* is a decision of an intermediate Arizona appellate court, this section does not apply because a question of state law would not be determinative. As already noted, "federal law provides the rule of decision in section 1983 actions." *Streit*, 236 F.3d at 560; *see also Goldstein*, 715 F.3d at 760-61 ("Though we must look at the relevant state law and state courts' characterizations of that law, the final determination [of *Monell* liability] under 42 U.S.C. § 1983 is a federal law statutory interpretation question[.]"); *see Cortez v. Cnty. of L.A.*, 294 F.3d 1186, 1189 (9th Cir. 2002) (finding that "the determination of § 1983 liability is governed by federal law").

Admittedly, some cases have said that that "[w]hether a particular official has final policymaking authority is a question of *state law*." *McMillian*, 520 U.S. at 786 (emphasis in original) (internal quotation marks and citations omitted). Read in context, however, these cases are clear that the ultimate question of § 1983 liability is one of federal law. *See id.* ("'[The] federal question can be answered only after considering the provisions of state law that define the agency's character.'") (quoting *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 430 n.5 (1997)). Because the question of the County's liability under § 1983 for Sheriff Arpaio's law-enforcement decisions is one of federal and not state law, it is not appropriate for certification.

**IT IS ORDERED** that the County's motion for reconsideration (Doc. 141) is **denied**.

Dated this 27th day of March, 2015.

David G. Campbell
United States District Judge