**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Puente Arizona, et al., | No. CV-14-01356-PHX-DGC |
| Plaintiffs, | |
| v. | **ORDER** |
| Joseph M. Arpaio, Sheriff of Maricopa County, Arizona, in his official capacity, et al., | |
| Defendants. | |

The Court held a discovery conference call with the parties on January 20, 2016. Doc. 370. Defendants raised concerns regarding invocations of the Fifth Amendment during the depositions of the two Expungement Plaintiffs, Sara Edith Cervantes Arreola and Elia Estrada Fernandez. Because assertions of the Fifth Amendment must be addressed on a question-by-question basis, the Court directed the parties to submit a matrix which set forth each question, each Fifth Amendment refusal to answer, Defendants' arguments as to why the invocation was improper, and Plaintiffs' arguments as to why the Fifth Amendment was properly invoked. Doc. 373.

The parties submitted the matrix on January 29, 2016. Doc. 398. The Court has conducted a question-by-question review, and has also read the questions and answers in the context of the deposition transcripts which the Court later required the parties to file. Docs. 424; 424-1. The Court concludes that the Fifth Amendment privilege against self-incrimination was properly invoked by the Expungement Plaintiffs with respect to virtually all of the questions.

### A. Legal Standard.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Fifth Amendment's protections apply to civil proceedings. *Doe v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000). In the civil context "the invocation of the privilege is limited to those circumstances in which the person invoking the privilege reasonably believes that his disclosures could be used in a criminal prosecution, or could lead to other evidence that could be used in that manner." *Id*. "Therefore, the privilege against self-incrimination does not depend upon the *likelihood*, but upon the *possibility* of prosecution and also covers those circumstances where the disclosures would not be directly incriminating, but could provide an indirect link to incriminating evidence." *Id*. (emphasis in original; quotation marks and citation omitted).

### B. Analysis.

Virtually all of the questions at issue concern the Expungement Plaintiffs' use of falsified documents to obtain employment. There were many questions about social security numbers, including whether certain social security numbers belonged to the Expungement Plaintiffs (*see* Docs. 424 at 56; 424-1 at 18-19, 36-37, 102-03), whether they had used these social security numbers to obtain employment (*see* Docs. 424 at 43-44, 49, 53; 424-1 at 16-19, 36-37, 96-98, 103-04, 106-08), and how they had initially obtained these social security numbers (*see* Docs. 424 at 36; 424-1 at 102-03). There were also a number of questions about tax documents, including whether the Expungement Plaintiffs had signed certain forms, such as IRS Form W-4 (*see* Doc. 424 at 37-38, 41-43) and Arizona Form A-4 (*see id.* at 44), whether they had filed tax returns (*see* Docs. 424 at 57; 424-1 at 27), and whether information on certain tax documents was accurate (*see* Doc. 424 at 44). Ms. Cervantes Arreola was asked whether an immigration document, a Permanent Resident Card, was hers. *See id.* at 53-54. Ms. Estrada Fernandez was asked about using a false name on her employment paperwork. *See* Doc. 424-1 at 32-33.

Defendants argue that the Fifth Amendment was not properly invoked in response to these questions because the Expungement Plaintiffs admit they were previously convicted under Arizona identity theft statutes for using false identifications to obtain employment, the convictions were based on the Expungement Plaintiffs' guilty pleas, the prosecutions in which the Expungement Plaintiffs pled guilty were based on the very documents presented to them in their depositions, three years have now passed without any evidence of a federal investigation or federal prosecution based on the same documents and information, and the Expungement Plaintiffs therefore have not shown any substantial or real threat of prosecution. For several reasons, the Court is not persuaded by these arguments.

First, although it is true that the Expungement Plaintiffs have admitted that they were convicted of violating Arizona identity theft laws, they are not basing their current Fifth Amendment assertions on those laws. Instead, they base their invocations of the Fifth Amendment on federal statutes prohibiting the making or use of false statements on tax documents (26 U.S.C. § 7206(1)), fraud or misuse of immigration or other documents (18 U.S.C. § 1546(a), (b)), social security fraud (18 U.S.C. § 408(a)(7)(c)), the making of false statements (18 U.S.C. § 1001(a)), perjury (18 U.S.C. § 1621), and tax evasion (26 U.S.C. § 7201)). The fact that the Expungement Plaintiffs were previously convicted of violating Arizona identity theft laws does not prohibit their prosecution under these federal statutes.

Second, Defendants assert that prosecution of the Expungement Plaintiffs under the federal statutes is highly unlikely given that three years have passed since they entered guilty pleas in the state case. Defendants also note that the Expungement Plaintiffs identify no instances where similar prosecutions have occurred. All of this may be true, but Defendants have not shown that prosecutions based on the above-cited federal statutes would be barred by the statute of limitations, double jeopardy, or some form of immunity. Thus, there appears to be no legal bar to the prosecution of the Expungement Plaintiffs for violating these laws.

Third, Defendants note that the various documents presented during the depositions were the same documents at issue in the Expungement Plaintiffs' violation of Arizona identity theft laws. But Defendants have not shown where the Expungement Plaintiffs admitted the facts asked about in their depositions. The parties have provided the Court with the transcript of Ms. Cervantes Arreola's guilty plea in state court, and the plea colloquy contains nothing more than a simple admission of guilt. *See* Doc. 398-1 at 10 (admitting that "on or about July 8, 2010 and within Maricopa County, Ms. Cervantes possessed or used personal identifying information of another person, including a fictitious person, with the intent to obtain employment"). It did not address any of the documents presented during Ms. Cervantes Arreola's deposition, and did not include her admission to any of the facts about which she was asked in the deposition. Thus, even though the documents may have been at issue in the state court prosecutions, Defendants cannot show that the Expungement Plaintiffs previously made admissions with respect to those specific documents. Answers to the questions posited by the Defendants would therefore be new admissions.

Fourth, the Court is not persuaded that it can overrule the Expungement Plaintiffs' Fifth Amendment assertions merely because prosecution under the relevant federal statutes appears unlikely. It is true that the law on this subject is somewhat ambiguous, providing helpful quotations for both sides. The Supreme Court has stated that the Fifth Amendment applies only when a person is faced with "substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *Marchetti v. United States*, 390 U.S. 39, 53 (1968) (citations omitted). It is also true, however, that courts have emphasized, as quoted above, that the "privilege against self-incrimination does not depend upon the *likelihood*, but upon the *possibility* of prosecution." *Glanzer*, 232 F.3d at 1263 (citing *United Liquor Co. v. Gard (In Re Seper)*, 705 F.2d 1499, 1501 (9th Cir. 1983)).

The Court finds helpful guidance in the Supreme Court's seminal decision of *Hoffman v. United States*, 341 U.S. 479 (1951). The high court made clear that the

- 4 -

privilege against self-incrimination "not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Id.* at 486 (citation omitted). The court clarified that "this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer." *Id.* (citation omitted). The court also stated that "[t]o sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* at 486-87.

The Court has reviewed each of the federal statutes cited by the Expungement Plaintiffs and concludes that the questions asked by Defendants would assist a prosecutor in proving some element of the crimes set forth in those statutes. They would, as *Hoffman* notes, "furnish a link in the chain of evidence" needed to prosecute the Expungement Plaintiffs for a federal crime. And when the Court considers the questions in the setting in which they were asked, as *Hoffman* directs, the Court concludes that the Expungement Plaintiffs have reasonable cause to apprehend danger from answering the questions. The Expungement Plaintiffs admit they are undocumented immigrants. They have previously admitted to violating state identity theft statutes. Their responses to questions posed by Defendants could provide evidence upon which a federal prosecutor might rely in prosecuting them for various federal crimes. Defendants have identified no legal impediment to such a prosecution. Given these circumstances, the Court finds that the Expungement Plaintiffs have reasonable cause to apprehend danger from the questions posed by Defendants.

True, three years have passed since the Expungement Plaintiffs admitted to state identity theft. Also true, the Expungement Plaintiffs have not cited examples of similar prosecutions. But the Court can find no case holding that the Fifth Amendment was improperly invoked merely because the person asserting the privilege was unable to

prove an imminent threat of prosecution. Clearly, the possibility of prosecution exists here, and answers to the questions could provide evidence for such a prosecution. This is sufficient to sustain the Expungement Plaintiffs' invocation of the Fifth Amendment. *See Glanzer*, 232 F.3d at 1263; *see also United States v. Jones*, 703 F.2d 473, 478 (10th Cir. 1983) ("Once the court determines that the answers requested would tend to incriminate the witness, it should not attempt to speculate whether the witness will in fact be prosecuted.") (collecting cases); *United States v. Edgerton*, 734 F.2d 913, 921 (2d Cir. 1984) (same).

**C.     Conclusion.**

The Court concludes that the Fifth Amendment was properly invoked with respect to questions 1-3, 5-9, 11, and 14-17 in the Cervantes Arreola deposition. These numbers correspond to numbers in the parties' matrix. *See* Doc. 398. The Court finds that questions 4, 10, 12-13, and 18 were ultimately answered by Ms. Cervantes Arreola and therefore present no Fifth Amendment issue. The Fifth Amendment was also properly invoked in response to questions 2-9 and 11-21 in the Estrada Fernandez deposition. Questions 1 and 10 were ultimately answered by Ms. Estrada Fernandez and therefore do not present a Fifth Amendment issue.

Because each of the questions either invoked a proper Fifth Amendment objection or was ultimately answered, the Court concludes that no basis exists for Defendants to conduct further depositions of the Expungement Plaintiffs on the matters addressed in this order.

Dated this 19th day of February, 2016.

David G. Campbell
United States District Judge