**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Puente Arizona, et al.,<br><br>              Plaintiffs,<br><br>v.<br><br>Joseph M. Arpaio, Sheriff of Maricopa County, Arizona, in his official capacity, et al.,<br><br>              Defendants. | No. CV14-1356 PHX DGC<br><br>**ORDER** |

On January 22, 2016, the Court entered an order addressing several discovery issues. Doc. 373. Plaintiffs seek clarification and partial reconsideration of the order. Doc. 409. Defendants have filed a response as ordered by the Court. Docs. 414, 429. The Court will grant the motion in part and deny it in part.

**A.     Cervantes Arreola Deposition.**

Plaintiffs argue that Expungement Plaintiff Cervantes Arreola should not be deposed again because she answered all questions in her deposition other than those where she asserted a Fifth Amendment privilege and questions concerning family members and efforts to obtain employment (discussed below). Doc. 409. Defendants respond that Ms. Cervantes Arreola was slow in answering several questions and unreasonably delayed Defendants' ability to complete the deposition. Doc. 429 at 3-5. The Court directed Defendants to provide specific examples. Doc. 414 at 2.

The examples provided by Defendants do not support their position. *See* Doc. 429 at 4-5. Defendants assert that Ms. Cervantes refused to provide her address by invoking

the Fifth Amendment, and only later provided it. The transcript shows, however, that she provided it one question later. Doc. 424 at 46-47. Defendants contend that Ms. Cervantes Arreola refused to state whether she was working despite her lawyer's withdrawal of a Fifth Amendment objection, but Defendants did not re-ask the question when the objection was withdrawn. *Id*. at 81-82. Defendants assert that Ms. Cervantes Arreola said she did not want to answer a question about how she signed her name despite her lawyer's withdrawal of a Fifth Amendment objection, but she did answer the question immediately after a discussion with her counsel. *Id*. at 46, line 20. Defendants assert that Ms. Cervantes Arreola was too tired to answer a question, but the question was of marginal relevance ("Do you believe that your involvement in this case will change the laws?") (*id*. at 112), defense counsel inquired at some length into why Ms. Cervantes Arreola was tired (*id*. at 112-14), the parties agreed that she could rest (*id*. at 114), she did rest and then said she was feeling better (*id.*), and yet defense counsel did not re-ask the question (*id*.).[1]

### B.   Relevancy of Family Member Information.

The Court's previous order held that Defendants could inquire into the names and immigration status of family members of the Expungement Plaintiffs. Doc. 373 at 2. Plaintiffs ask the Court to reconsider this decision, arguing that information about the immigration status of family members is not relevant to any issue in this case and that requiring the Expungement Plaintiffs to disclose it would have a substantial chilling effect on their involvement in this case. Doc. 409 at 6-7.

The Court specifically directed Defendants to address the relevancy of this information in their response to Plaintiffs' motion, but they did not. Defendants argue that the Court previously decided this issue and should not address it again, and that the protective order adequately protects Plaintiffs against possible disclosure of this information, but they say nothing about relevancy. *See* Doc. 429 at 5-10.

---

[1] Defendants cite other examples in a footnote (Doc. 429 at 5 n. 2), but the Court finds them no more persuasive than those discussed above.

Upon reconsideration, the Court cannot see the relevancy of the immigration status of family members of the Expungement Plaintiffs. The Expungement Plaintiffs do allege that they were forced to work to support their families (Doc. 185, ¶¶ 11-12), and Defendants may ask them which family members they supported as alleged in paragraphs 11 and 12 of the Second Amended Complaint. But Defendants should not inquire further about family members and should not ask about their immigration status.

### C. Continuing Employment.

The Court's previous order held that Defendants could inquire into efforts by the Expungement Plaintiffs to seek or obtain employment other than the employment which was the subject of their previous arrests and prosecutions. Doc. 373 at 2. Plaintiffs ask the Court to reconsider this decision, arguing that this information is irrelevant to the expungement analysis, which focuses only on the constitutionality of the challenged conviction. Doc. 409 at 5-7. Defendants counter that this information is relevant because "equity is the sole basis for a court to order expungement[,] and the balancing of equities must always be considered before granting any [equitable] relief." Doc. 429 at 9.

Defendants are correct that this Court's authority to grant expungement is rooted in equity, but it does not follow that the Court may engage in a freewheeling balancing analysis when applying this relief. Because "the Constitution is the ultimate expression of the public interest," equitable balancing is inappropriate where a party's constitutional rights are at stake. *Llewelyn v. Oakland Cty. Prosecutor's Office*, 402 F. Supp. 1379, 1393 (E.D. Mich. 1975). Stated differently, "enforcement of an unconstitutional law is always contrary to the public interest." *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013).

This circuit and other courts have therefore held that a conviction under an unconstitutional statute is properly expunged. *See, e.g., Shipp v. Todd*, 568 F.2d 133, 134 n.1 (9th Cir. 1978); *Kowall v. United States*, 53 F.R.D. 211, 216 (W.D. Mich. 1971); *United States v. Rothstein*, 187 F. 268, 270 (7th Cir. 1911). Defendants do not cite any case holding that a district court may withhold expungement where the plaintiff's

conviction rests on an unconstitutional statute.[2]

Even if the Court were to conclude otherwise, Defendants have not shown that information about the Expungement Plaintiffs' other employment activities would be relevant to the balancing of equities. Although Defendants assert that it would be inequitable to "reward" an individual who continues to engage in misconduct (Doc. 429 at 14), a plaintiff's unrelated misconduct is not a valid basis for denying him relief from an unconstitutional statute. *Cf. Toomer v. Witsell*, 334 U.S. 385, 393 (1948) (plaintiff's "previous misconduct, not having any relation to the constitutionality of the challenged statutes, did not call for application of the clean hands maxim" in preliminary injunction suit). If equitable balancing were appropriate at all, it would focus on the public interest and the relative hardship to the parties. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008). Defendants have not shown that the information they seek is relevant to these questions. Therefore, the Court will grant reconsideration and preclude Defendants from inquiring into the Expungement Plaintiffs' other employment activities.

**IT IS ORDERED** that Plaintiff's motion for reconsideration (Doc. 409) is **granted in part** and **denied in part**. Defendants may ask which family members were supported as alleged in paragraphs 11 and 12 of the Second Amended Complaint, but may not inquire into the immigration status of the Expungement Plaintiffs' family members or other efforts of the Expungement Plaintiffs to obtain work.

Dated this 24th day of February, 2016.

David G. Campbell
United States District Judge

---

[2] *Rogers v. Slaughter*, 469 F.2d 1084 (5th Cir. 1972), is not to the contrary, as there was no claim in *Rogers* that the underlying statute was unconstitutional.