**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Puente Arizona, et al., | No. CV-14-01356-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Paul Penzone, et al., | |
| Defendants. | |

Plaintiffs have filed a motion for attorneys' fees and non-taxable expenses. Doc. 708. The motion is fully and extensively briefed, and no party has requested oral argument. The Court will grant the motion in part.

### A. Legal Standards.

A party requesting an award of attorneys' fees and non-taxable expenses must show that it is (a) eligible for an award, (b) entitled to an award, and (c) requesting a reasonable amount of fees. *See* LRCiv 54.2(c). Under the general fee-shifting provision for federal civil rights cases, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). "[A] court's discretion to deny fees under § 1988 is very narrow and . . . fee awards should be the rule rather than the exception." *Herrington v. Cty. of Sonoma*, 883 F.2d 739, 743 (9th Cir. 1989) (internal quotation marks omitted).

Defendants do not dispute that Plaintiffs are prevailing parties in this case, but they contend that the hourly rates sought by Plaintiffs' attorneys are in some cases too

high, the amount of time for which Plaintiffs seek compensation should be reduced, and the overall fee award should be reduced because Plaintiffs did not succeed on all of their claims. Plaintiffs provide a number of declarations in support of their fee request (Docs. 708-1 to 708-15), and Defendants provide an extensive and detailed declaration by attorney William Klain (Doc. 715-1).

To determine the reasonableness of requested attorneys' fees, federal courts generally use the "lodestar" method. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *United States v. $186,416.00 in U.S. Currency*, 642 F.3d 753, 755 (9th Cir. 2011). The Court must first determine the initial lodestar figure by taking a reasonable hourly rate and multiplying it by the number of hours reasonably expended on the litigation. *Hensley*, 461 U.S. at 433. In determining whether the hourly rate or hours expended are reasonable, the Court should consider the *Kerr* factors that have been subsumed within the initial lodestar calculation. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *Cunningham v. Cty. of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1988). These factors are: "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, and (4) the results obtained." *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1262 n.6 (9th Cir. 1987).

**B.    Lodestar Calculation.**

**1.    Hourly Rates.**

Reasonable hourly rates are not determined by the rates actually charged in a case, but "by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995). The relevant community is generally the forum in which the district court sits, *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010), but "rates outside the forum may be used if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case."

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quoting *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)).

Plaintiffs seek to recover out-of-state hourly rates for three sets of attorneys in this case: the U.C. Irvine School of Law Immigrant Rights Clinic ("UCI IRC"), the National Day Laborer Organizing Network ("NDLON"), and the law firm of Hadsell, Stormer & Renick LLP ("HSR"). Plaintiffs seek to recover existing hourly rates for three sets of Arizona lawyers: The ACLU Foundation of Arizona ("ACLU-AZ"), attorney Ray Ybarra Maldonado, and the law firm of Quarles & Brady LLP ("QB"). Doc. 708 at 6.

Defendants argue that Plaintiffs should be limited to reasonable Arizona rates for all lawyers because they have not shown that it was necessary to use out-of-state counsel. Doc. 715 at 5-6. The Court does not agree. Plaintiffs have submitted persuasive evidence that there were insufficient local counsel with the willingness and requisite "degree of experience, expertise or specialization required to handle properly the case." *Camacho*, 523 F.3d at 979 (citing *Barjon*, 132 F.3d at 500). Daniel Pochoda, who served as Legal Director of the ACLU-AZ for years and is familiar with the local legal market, attests that there is a limited pool of civil rights attorneys who can handle a case like this. Doc. 708-8 ¶¶ 3-5; *see also* Maldonado Decl., Doc. 708-9, ¶¶ 8-9 (judging that the only option was to look outside Arizona and noting that some attorneys outside of Arizona were unavailable to take the case); Garcia Decl., Doc. 95-2 ¶ 14 (explaining that Puente had been looking for pro bono counsel to bring a challenge since 2013). Mr. Pochoda's difficulty in recruiting local firms as the case entered the discovery phase supports the need to look outside the state. Doc. 708-8 ¶¶ 6-7. Mr. Klain notes that there are many lawyers in the Phoenix area who do civil rights work, but he did not attempt to locate lawyers or firms to take on this level of litigation against prominent county officials over an extended period of time. Doc. 715-1 ¶¶ 16-19.

The Court will award the hourly rates sought by Plaintiffs' out-of-state counsel, with two exceptions.

First, the Court will cap out-of-state attorneys' fees at $750 per hour. The Court concludes that this cap is reasonable given the fact that rates above this level represent premium billing in large legal markets – a rate of pay not warranted for counsel who did not take a leading role in this case. This will reduce fees for the HSR firm by $6,300 (*see* Doc. 708-13 ¶ 19: $1,100 x 18 - $750 x 18 = $6,300).[1]

Second, the Court will also reduce the hourly rate charged for U.C. Irvine law students from the requested $200 to $125. The Court views $125 per hour as more than reasonable for law students who have not yet graduated from law school or passed the bar exam. UCI IRC seeks to recover $56,050 for law student time. Doc. 708-6 ¶¶ 17, 25. Reducing this amount by 37.5% (representing the percentage reduction from $200 to $125 per hour) results in a reduction of $21,019 for fees sought by UCI IRC.

The Court will award Ms. Lai's requested hourly rate of $565, despite Defendants' argument that her time in practice is insufficient to justify such a rate. Ms. Lai acted as the lead attorney in this case and managed the litigation effectively. The Court views her hourly rate as comparable to rates charged by lawyers handling sophisticated litigation in Southern California. Doc. 708-6 ¶¶ 3-11.

The Court will also accept the hourly rates charged by the Arizona attorneys: ACLU-AZ, Ray Ybarra Maldonado, and QB. After reviewing the information provided by these attorneys and Mr. Klain, and based on the Court's familiarity with the Phoenix legal market, the Court concludes that these hourly rates are reasonable.[2]

### 2. Compensable Hours.

Plaintiffs reduced the time for which they seek compensation to account for partial success, duplication, and unnecessary work. Plaintiffs explained in their motion that they

---

[1] Mr. Klain notes that attorney Barbara Hadsell at HSR bills at a rate of $975 (Doc. 715-1 ¶¶ 32-33), but HSR is not seeking compensation for her time (*see* Doc. 708-13 ¶ 19).

[2] The Court notes that Mr. Klain presents two options for reasonable hourly rates. Option 1 would award QB and Mr. Maldonado their requested hourly rates and would reduce ACLU-AZ's rates by only about 15%. Doc. 715-1 ¶ 54. Defendants view this option as reasonable. *See* Doc. 715 at 8.

reduced several categories of time by 50% (Doc. 708 at 14-15) and some categories by 75% or more (*id.* at 16-17). Plaintiffs further explained that they eliminated excessive, redundant, or otherwise unnecessary work (*id.* at 17-18), did not bill for more than one or two attorneys at any hearing or deposition (*id.*), eliminated time for attorneys or law students that had limited involvement in the case (*id.* at 18), and removed the "great majority" of student time (*id.*). Defendants' expert added all of the reductions apparent from Plaintiffs' declarations and concluded that they amounted to an overall reduction of approximately 28%. Doc. 715-1 ¶ 57. But Plaintiffs explained in their reply that the declarations submitted with their motion did not attempt to include all of the hours they had eliminated, as discussed above, and that the total hours removed from their request amounted to 49.3% of the total billed in this case. Doc. 725 at 17.

Defendants suggest that the Court make various additional reductions from specific categories of Plaintiffs' fees. Doc. 715 at 9-11. These proposed reductions are based on Mr. Klain's opinion that time billed for some activities was not reasonable, or other alleged defects in billing. While the Court does not doubt Mr. Klain's expertise, and attorneys can have good faith disagreements as to how much time a task should take, the Court cannot conclude that Plaintiffs' requested hours are unreasonable. This was a complex, difficult case. It involved substantial discovery, numerous motions, an appeal, and complex constitutional issues, and resulted in a declaration that certain applications of Arizona law were preempted and an injunction against the Maricopa County Sheriff's Office ("MCSO"). Looking at some of the "reasonableness factors" identified by the Ninth Circuit – the quality of representation and the complexity and novelty of the issues presented – the Court does not find a basis for a further downward adjustment of hours. *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 740 (9th Cir. 2016).

Looking at other reasonableness factors, however, including the benefit obtained by Plaintiffs and the lack of success on much of the case, the Court concludes that an additional downward adjustment of hours is warranted. *Id.* Plaintiffs lost on their facial preemption claim before the Ninth Circuit, lost their equal protection claim before this

Court, withdrew their as-applied equal protection claim, lost their request for an expungement remedy, and lost their request for an injunction against the Maricopa County Attorney's Office ("MCAO"). Plaintiffs also lost on their argument that the County bears *Monell* liability for the MCAO, and withdrew their class claims. On the claim Plaintiffs did win – as-applied preemption – the Court adopted a scope of preemption narrower than Plaintiffs had proposed.

The Court concludes that Plaintiffs' lack of success warrants a more substantial reduction than Plaintiffs have offered. Plaintiffs' voluntary 49% reduction, which was entirely warranted given the duplication of much of their work, the number of Plaintiffs' lawyers that attended hearings, participated in conference calls, and attended depositions, and the number of law student hours incurred in the U.C. Irvine clinical program – fails sufficiently to account for the fact that Plaintiffs lost three of their four claims and prevailed only partially on their fourth. As examples, Plaintiffs reduced their time devoted to the preliminary injunction by 50%, even though they lost their preliminary injunction on appeal. Doc. 708 at 14. Plaintiffs also retained 50% of the time they devoted to an unsuccessful sanctions motion and 50% of the time spent unsuccessfully seeking expungement. *Id.* at 15-16.

The Supreme Court has explained that, in accounting for partial success, "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436-37. Rather than attempting an hour-by-hour reduction for the many lawyers and law students who worked on Plaintiffs' case, the Court concludes that a further 25% reduction in the compensable time for all lawyers and law students is required to accurately reflect the mixed success of this case. This reduction constitutes the Court's best judgment regarding the effect Plaintiffs' losses should have on the hours recovered.

Because the Court is making an across-the-board reduction, it need not calculate the hours of each lawyer and law student and multiply those hours by the appropriate hourly rate. For ease of calculation, the Court will simply make a 25% reduction in the

amount sought by each law group seeking compensation, after taking into account the hourly rate reductions discussed above. The Court accordingly makes the following lodestar calculation:

| Firm | Fee Request[3] | Hourly Rate Adjustment | Lack-of-Success Adjustment | Lodestar |
|---|---|---|---|---|
| UCI IRC | $672,454 | Less $21,019 | Less 25% | $488,576 |
| ACLU-AZ | $65,298 | | Less 25% | $48,974 |
| Maldonado | $14,561 | | Less 25% | $10,921 |
| NDLON | $296,992 | | Less 25% | $222,744 |
| HSR | $135,998 | Less $6,300 | Less 25% | $97,274 |
| QB | $196,668 | | Less 25% | $147,501 |
| Total Lodestar | | | | $1,015,990 |

The Supreme Court has explained that a lodestar calculation "is more than a mere 'rough guess' or initial approximation of the final award to be made. Instead, '[w]hen . . . the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is *presumed* to be the reasonable fee' to which counsel is entitled." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986), *supplemented by* 483 U.S. 711 (1987) (emphasis in original) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984).

The Court concludes that this fee award accurately reflects all of the relevant factors, including relevant *Kerr* factors. This includes several factors argued by Defendants.

For example, Defendants acknowledge that this case involved an issue of first impression, but assert that Plaintiffs relied on discovery and rulings from other cases. Doc. 715 at 19. But that often is true. The Court finds that the issues presented in this case were novel and difficult, justifying a substantial fee.

Defendants argue that Plaintiffs' counsel were not precluded from handling other litigation by their involvement here (*id.*), but the Court does not view that as a basis for

---

[3] This column includes Plaintiffs' adjusted requests from their reply memorandum. Doc. 725 at 25.

- 7 -

further reducing the hours they devoted to this case. They certainly were unable to work on other mattes while they were working on this case.

Defendants suggest that further reductions are warranted by considering the experience, reputation, and ability of Plaintiffs' lawyers. *Id.* at 20. The Court does not agree. Plaintiffs' counsel were well qualified to handle this litigation and have been involved in other high-profile civil rights litigation.

Defendants suggest that this case cannot be viewed as undesirable because the statutory preemption provision made some success likely. *Id.* at 20-21. But Defendants did not concede this point until after Plaintiffs brought suit, and contested the scope of statutory preemption to the end.

Finally, Defendants argue that fee awards in other cases provide no basis for a high award here. *Id.* at 21-22. But neither do they support reducing the fee further.

Considering Defendants' arguments and all of the relevant *Kerr* factors, the Court concludes that the lodestar amount calculated above represents an appropriate fee award. This is a substantial award to be sure, but Plaintiffs obtained a significant victory, altering the way MCAO and MCSO prosecute identity theft claims against unauthorized aliens and clarifying the kinds of action preempted by federal law.

**C.   Other Issues.**

The Court will deny Defendants' motion to strike Plaintiffs' reply or file a sur-reply and request for sanctions. Doc. 727. With the exception of the size of the Plaintiffs' own fee reduction – which was described in some detail in Plaintiffs' motion and supplemented only modestly in Plaintiffs' reply – the Court has not considered the reply arguments and declarations to which Defendants object.

The Court will not award fees or expenses against the State of Arizona. Plaintiffs did not obtain relief against the State. Similarly, the Court will grant the State's request for relief from taxable costs. Doc. 726.

**IT IS ORDERED:**

1.    Plaintiffs motion for fees and expenses (Doc. 708) is **granted in part**. Plaintiffs are awarded $1,015,990 in attorneys' fees and $20,532.08 in non-taxable

- 8 -

1 | expenses against the Maricopa County Attorney in his official capacity, the Maricopa County Sheriff in his official capacity, and Maricopa County.

2. Defendants' motion to strike (Doc. 727) is **denied**.
3. The State's motion for relief from taxable costs (Doc. 726) is **granted**.
4. The Clerk is directed to terminate this action.

Dated this 25th day of October, 2017.

_____
David G. Campbell
United States District Judge